## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

JERMAINE LOEB                                                                          CIVIL ACTION

VERSUS                                                                                        NO. 14-1453

ROBERT C. TANNER, WARDEN                                                      SECTION "F"(3)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, it is recommended that the instant petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### I.      *State Court Procedural Background*

The petitioner, Jermaine Loeb, is incarcerated at the Rayburn Correctional Center in Angie, Louisiana.[2]  On February 7, 2008, Loeb was charged by bill of information with one count of possession with intent to distribute heroin pursuant to La. Rev. Stat. 40:966A.[3]  On

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]State Rec., Vol. 1 of 6, Docketmaster, Entry Dated 2/7/08.

February 20, 2008, Loeb pleaded not guilty to the charge.[4]   On December 3, 2008, Loeb proceeded to trial, which lasted two days.[5]   On December 4, 2008, the jury unanimously found Loeb guilty as charged.[6] On July 20, 2009, Loeb was found to be a third felony offender and sentenced to thirty-five (35) years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.[7]

Through counsel, Loeb appealed his sentence to the Louisiana Fifth Circuit Court of Appeal.[8] The Fifth Circuit affirmed his conviction and sentence.[9]  The Louisiana Supreme Court subsequently denied his related writ application.[10]   His conviction became final for AEDPA purposes ninety (90)  days later, on January 13, 2011, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United State Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), *cert denied*, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[4]*Id.*

[5]*State v. Loeb*, 34 So. 3d 917 (La. App. 5th Cir. 2010); State Rec., Vol. 2 of 6, 5th Cir. Opinion, 2009-KA-341, 2/23/10; State Rec., Vol. 1 of 6, Trial Transcript, 12/3/08; Trial Transcript 12/4/08; State Rec., Vol. 2 of 6, Trial Transcript 12/4/08 (continued).

[6]State Rec., Vol. 2 of 6, Trial Transcript, 12/4/08.

[7]State Rec., Vol. 2 of 6, Plea of Guilty Multiple Offender Form, 7/20/09.

[8]State Rec., Vol. 2 of 6, Appellate Brief, 6/17/09.

[9]*State v. Loeb*, 34 So. 3d 917 (La. App. 5th Cir. 2010); State Rec., Vol. 2 of 6, 5th Cir. Opinion, 2009-KA-341, 2/23/10.

[10]*State v. Loeb*, 45 So. 3d 1110 (Mem) (La. 2010); State Rec., Vol. 6 of 6, La. S. Ct. Order, 2010-K-0681, 10/15/10.

On November 22, 2011, through counsel, Loeb filed an application for post-conviction relief in the state district court.[11]  His counseled application asserted the following claims for relief: (1) ineffective assistance of trial counsel for failing to investigate, failing to interview the only witness prior to the day of trial, and failing to properly cross-examine the arresting officer; and (2) denial of due process when the prosecution failed to disclose favorable evidence to the defense which allowed Loeb to be convicted on perjured testimony. Additionally, on April 6, 2012,[12] petitioner filed various pro se motions and a supplemental memorandum of law in support of his post-conviction application.[13]   In his pro se memorandum Loeb raised two claims: (1) ineffective assistance of trial counsel for failing to investigate, failing to subject the prosecution's case to meaningful adversarial testing, and failing to hire an expert witness to testify regarding the effects of pepper spray; and (2) ineffective assistance of counsel on appeal.

On November 20, 2012, the state district court denied relief on the claims.[14]  The court first held that his claim regarding the prosecution's alleged failure to disclose favorable evidence was procedurally barred from review under La. C. Cr. P. art. 930.4 because it could have been, but was not, raised on appeal.  The court also alternatively stated that the claim would be denied on the merits, since it was "based on speculation" and "conclusory." The court

---

[11]State Rec., Vol. 2 of 6, Post-Conviction Relief Application, 11/22/11.

[12]Under Louisiana's prison mailbox rule, pro se prisoner pleadings are deemed filed when they are delivered to the prison authorities for mailing. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  Loeb dated the cover letter to the filing as April 6, 2012, which is the earliest date he could have delivered the application to prison authorities for mailing.

[13]State Rec., Vol. 1 of 6, Supplemental Pro Se Materials, 4/6/12.

[14]State Rec., Vol. 1 of 6, State District Court Order Denying Post-Conviction Relief, 11/20/12.

denied the rest of the claims as meritless, and determined that Loeb was not entitled to an evidentiary hearing.  The state district court also denied the accompanying motions.

On December 3, 2012, Loeb filed a counseled Motion to Set Aside Ruling upon Post-Conviction Relief.[15]  He also filed a notice of intent to file a remedial writ regarding the ruling, which included a proposed trial court order seeking a return date.[16]  However, the trial court never set a return date for the writ.  On December 5 and 17, his counsel filed supplemental exhibits to be attached to the motion and a motion to incorporate those exhibits.[17] On January 22, 2013, the state district court ordered the State to respond to the motion to set aside the ruling and the supplemental exhibits, and raise any procedural objections the State might have and otherwise address the merits of the claims.[18]

The State filed a response on February 11, 2013, asserting a procedural objection in that motions for rehearing or reconsideration of post-conviction denials are procedurally improper and Loeb should have sought relief through a writ application to the Louisiana Fifth Circuit to address his claims.[19]  On March 28, 2013, the state district court denied Loeb's

---

[15]State Rec., Vol. 1 of 6, Motion to Set Aside Ruling upon Post-Conviction Relief, 12/3/12.

[16]State Rec., Vol. 1 of 6, Notice of Intention to File Remedial Writ, 12/3/12.

[17]State Rec., Vol. 1 of 6, Motion to Set Aside Ruling upon Post-Conviction Relief Supplemental Exhibits, 12/5/12; Motion to Incorporate, 12/17/12, Motion to Set Aside Ruling upon Post-Conviction Relief Supplemental Exhibits Set 2, 12/17/12.

[18]State Rec., Vol. 1 of 6, State District Court Order, 1/22/13.  The date of filing on the order is January 18, 2013, but the Judge's signature has a date of January 22, 2013, so this Court defers to the latter date.

[19]State Rec., Vol. 1 of 6, State's Response to Motion to Set Aside Ruling upon Post-Conviction Relief, 2/11/13.

Motion to Set Aside Ruling upon Post-Conviction Relief.[20]  The state district court based its

denial on the procedural objection raised by the State:

> [Loeb]'s remedy to contest [the November 20, 2011] ruling was to seek
> appellate writ with the Fifth Circuit Court of Appeal.  Uniform Rules of
> the Courts of Appeal Rule No. 4-3 provides that a writ return date must be within
> 30 days of the ruling sought to be reviewed.  Petitioner failed to timely seek
> appellate review.[21]

Loeb's counsel timely filed a notice of intent to seek writs from this ruling, and the state

district court set a return date of April 29, 2013.[22]  Counsel then sought two extensions to file

a timely writ, and a return date was set for June 3, 2013.[23]  On June 3, 2013, Loeb's counsel

timely filed the application.[24]  On June 19, 2013, the Louisiana Fifth Circuit Court of Appeal

denied his writ application.[25]  The Fifth Circuit Court noted, however, that the state district

court never set the initial return date requested in the initial notice of intent to seek writs

following the November 20, 2012 ruling.  Furthermore, the Fifth Circuit found that the state

district court had also considered multiple pleadings filed by both sides following the initial

ruling.  Thus the Fifth Circuit stated:

> We will consider both the November 20, 2012 and the March 28, 2013 rulings
> based on the followings reasons: relator timely filed the first and second notices
> of intent; the trial court gave relator until June 3, 2013 to apply for writs to

---

[20]State Rec., Vol. 1 of 6, State District Court Order, 3/28/13.

[21]*Id.*

[22]State Rec., Vol. 1 of 6, Notice of Intent to Seek Writs, 4/4/13.

[23]State Rec., Vol. 1 of 6, State District Court Order, 5/29/13.

[24]State Rec., Vol. 6 of 6, 5th Cir. Writ App, 13-KH-471, 6/3/13.

[25]State Rec., Vol. 1 of 6, 5th Cir. Opinion, 13-KH-471, 6/19/13.

review its rulings and the March 28, 2013 ruling is related to the November 20, 2012 ruling.[26]

The Fifth Circuit Court of Appeal thereafter engaged in a thorough review of each of Loeb's claims, finding them all meritless.  Loeb's subsequent writ application to the Louisiana Supreme Court was also denied without stated reasons on May 2, 2014.[27]

## II.    Federal Habeas Petition

On June 18, 2014, Loeb filed the instant *habeas corpus* proceeding in this Court.[28]  On August 14, 2014, Loeb filed an Amended and Supplemental Writ of Habeas Corpus, which asserts that the state courts made an unreasonable determination as to: (1) his claim of ineffective assistance of counsel; (2) his claim concerning the State's alleged failure to disclose favorable evidence and allowing perjured testimony without correcting it; and (3) the failure to suppress the evidence and confession.[29]  The State filed a response asserting that the petition is untimely, and that alternatively, the claims lack merit.[30]

---

[26]*Id.*

[27]State Rec., Vol. 1 of 6, La. Sup. Ct. Order, 2013-KP-1754, 5/2/14.

[28]The United States Court of appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including *habeas corpus* petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 199); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Loeb's petition was filed by the clerk of this court on June 20, 2014.  Rec. Doc. No. 1.  However, Loeb's signature on the petition is dated June 18, 2014, which is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to this court.

[29]Rec. Doc. No. 5.

[30]Rec. Doc. No. 19.

### III.    *General Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, comprehensively revised federal *habeas corpus* legislation, including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996[31] and applies to *habeas* petitions filed after that date.   *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).   The AEDPA therefore applies to Loeb's petition, which, is deemed filed in this federal court on June 18, 2014.[32]

The threshold questions in *habeas* review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.   *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir.1997) (citing 28 U.S.C. § 2254(b), (c)).   After a review of the record, this Court finds that the petition is timely.

---

[31]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[32]*See* note 28, *supra*.

## IV.    *Statute of Limitations*

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[33] *Duncan v. Walker*, 533 U.S. 167, 179–80 (2001).  As stated above, Loeb did not seek review with the United States Supreme Court, and therefore his conviction became final ninety (90) days after the Louisiana Supreme Court denied relief on direct appeal, or on January 13, 2011. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert denied*, 529 U.S. 1099 (2000).

The AEDPA provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).  Loeb timely filed his application for post-conviction relief in the state district

---

[33]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

court on November 22, 2011, which tolled the AEDPA's one year limitations period.  Prior to that filing, 313 days had elapsed.

As discussed above, the state district court issued its denial on November 20, 2012.  At that time, Loeb's counsel timely filed a notice of intent to seek writs to the Fifth Circuit.  However, he also simultaneously filed a motion to set aside the ruling.  For whatever reason, the state district court declined to set a return date despite the timely filed notice of intent, and subsequently ruled on various pleadings submitted by both parties.  Furthermore, when Loeb sought a timely filed writ application to review the March 28, 2013 ruling, the Fifth Circuit acknowledged this fact and decided to review both the November 20, 2012 ruling and the March 28, 2013 ruling.  Thus, the Fifth Circuit declined to deny review on a procedural ground.

In light of these circumstances, this Court declines to adopt the State's narrowly drawn view that the federal petition is untimely.  Instead, this Court finds that Loeb's post-conviction relief application was pending for purposes of the AEDPA throughout the time it was under review, until the Louisiana Supreme Court denied his related timely writ application on May 2, 2014.  At that time there were fifty-two (52) days remaining in the limitations period.  As noted above, Loeb filed his petition for *habeas corpus* in this Court on June 18, 2014, forty-seven (47) days after the Louisiana Supreme Court denied his writ.  The application is therefore timely.  This Court now turns to its review of the merits of Loeb's claims.

## V.    *Standards of a Merits Review*

Amended subsections 2254(d)(1) and (2) of the AEDPA contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications

in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to

clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous'

or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–87, 178 L.Ed.2d 624 (2011) (citations omitted; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."

## VI.  *Petitioner's Claims*

Turning to review the merits of the case, this Court first recounts the following facts as summarized by the Louisiana Fifth Circuit Court of Appeal:[34]

---

[34]*State v. Loeb*, 34 So. 3d 917 (La. App. 5th Cir. 2010); State Rec., Vol. 2 of 6, 5th Cir. Opinion, 2009-KA-341, 2/23/10.

At approximately 12:45 p.m. on December 11, 2007, several officers of the Jefferson Parish Sheriff's Office were patrolling the Alex Korman area of the Woodmere Subdivision as part of Project Safe Neighborhood ("PSN"). Detective Kenneth Latour ("Detective Latour") and Sergeant Curtis Matthews ("Sergeant Matthews"), who were wearing black raid vests with "Sheriff" indicated in yellow, parked their unit and proceeded on foot patrol into a courtyard in the middle of an apartment complex that was known for drug trafficking. The officers' purpose of walking through the courtyard was to see if there was any activity.

Upon the officers' entry into the courtyard, they observed five male subjects talking in a group. Two of the subjects looked at the officers and immediately fled in opposite directions. The three other subjects remained at the scene. Detective Latour and Sergeant Matthews pursued the fleeing subjects, one of whom was Loeb. Sergeant Matthews was unable to catch up with Loeb and radioed for help. Detective Latour, who had lost the subject he was pursuing, along with Detective Alvin Modica ("Detective Modica"), and Sergeant Todd Vignes ("Sergeant Vignes"), who were in the area and part of the team working PSN, responded to Sergeant Matthews' request for assistance. Detective Modica, who was between two buildings in the area where Loeb was fleeing, heard Sergeant Matthews' radio call for help and then saw Loeb run past. Detective Modica chased Loeb, who was running in a full sprint, for a half block during which time Loeb looked back at Detective Modica several times. Detective Modica observed that Loeb had a red bandanna in one hand and some sort of plastic bag protruding from the other hand. When Detective Modica caught up with Loeb, Loeb dropped the bandanna and discarded the plastic bag. A fight ensued, and Detective Modica was forced to pepper spray Loeb in order to subdue and handcuff him.

Sergeant Vignes, who was behind Detective Modica during the chase, observed Loeb throw down a bandanna and a small object when Detective Modica caught up to him. Sergeant Vignes retrieved the discarded bandanna and object, which turned out to be a clear plastic bag that had twenty-seven individual packets of tin foil. He conducted a field test of the contents, which was positive for heroin. Loeb was then placed under arrest. A search of his person incident to arrest yielded $2,510 cash from Loeb's back pocket.

Loeb underwent a decontamination process for the pepper spray which involved facing him into the wind, rinsing his eyes with water, and being attended to by Emergency Medical Services. After the decontamination process, Sergeant Matthews advised Loeb of his rights, and he was transported to the detective bureau to be interviewed. Loeb participated in a pre-interview but refused to give a taped statement. According to Sergeant Matthews and Detective Modica, Loeb admitted during the pre-interview that he sold heroin

in the location where he was apprehended on a daily basis to make money. He also admitted that the police had caught him and he would "take his charge." Loeb did not testify at trial but presented the testimony of a close friend, Iona Wallace, who testified she gave Loeb $2,500 in cash the morning he was arrested. She explained the money was to purchase a car for herself and she gave Loeb the money to hold while she ran errands. She denied giving Loeb any drugs.

### 1.    Ineffective assistance of counsel

Loeb's first claim is that the state courts made an unreasonable determination in rejecting his claim of ineffective assistance of trial counsel. Specifically, he argues that trial counsel failed to thoroughly investigate the case, failed to present a defense and failed to subject the prosecution's case to adversarial testing. This claim must fail.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance

is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (*quoting Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Ineffective assistance of counsel claims present a mixed question of law and fact; therefore, when the state courts have rejected such claims on the merits, a federal *habeas* court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of such ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were

15

adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself. A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, –––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 785–86, 178 L.Ed.2d 624 (2011) (citation

omitted).  The Supreme Court then explained:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions*

16

> *were reasonable. The question is whether there is any reasonable argument that*
> *counsel satisfied Strickland's deferential standard.*

*Id.* at 788 (citations omitted; emphasis added).  In the instant case it is clear that petitioner

has not made the showing required to overcome these stringently deferential standards of

review.

This Court has thoroughly reviewed the record as well as the state court decisions

regarding his claims.  It is clear from this review that the state courts' denial of his claim was

not an unreasonable application of federal law.  Indeed, in the last reasoned state court

decision on this claim, the Louisiana Fifth Circuit Court of Appeal thoroughly analyzed the trial

court's rejection of this claim and applied the proper *Strickland* framework.

First, in Loeb's allegation that trial counsel failed to investigate, he asserts that counsel

failed to call the other witnesses who were arrested at the same time.  He argues that this was

a "critical omission" because the prosecution insisted he had been arrested alone after fleeing.

However, as the Fifth Circuit correctly noted, Loeb failed to present any evidence as to what

these individuals would have stated if called to testify, which rendered the claim both

speculative and conclusory.

As the United States Fifth Circuit Court of Appeals has explained:

Claims that counsel failed to call witnesses are not favored on federal habeas
review because the presentation of witnesses is generally a matter of trial
strategy and speculation about what witnesses would have said on the stand is
too uncertain. For this reason, we require petitioners making claims of
ineffective assistance based on counsel's failure to call a witness to demonstrate
prejudice by naming the witness, demonstrating that the witness was available
to testify and would have done so, setting out the content of the witness's
proposed testimony, and showing that the testimony would have been favorable
to a particular defense. This requirement applies to both uncalled lay and expert
witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *accord Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). In the instant case, Loeb presented no evidence in the state court proceedings –such as affidavits regarding the testimony of the alleged uncalled witnesses– demonstrating how they would have testified in a manner beneficial to the defense. Thus, he has clearly not met his burden on this claim.

Second, in his argument that trial counsel failed to present a defense, Loeb simply states without specificity that "Counsel's deficient performance, here, effectively prevented petitioner from presenting a defense." This is merely a bare bone allegation which lacks evidentiary support, and thus he has also not met his burden on this claim.

Finally, Loeb contends that trial counsel failed to subject the prosecution's case to meaningful adversarial testing because trial counsel "failed to emphasize that petitioner refused to give a formal taped statement" and counsel failed to adequately cross-examine the officers. The Fifth Circuit concluded that these issues were questions of trial strategy under *Strickland*, which are to be treated with exceptional deference. This decision was in accord with federal law.

Because Loeb has failed to meet the burden of proving deficient performance, this Court need not consider the prejudice prong. Nonetheless, the Court notes that, after its review of the record and in light of the abundance of evidence against Loeb, he has also failed to

demonstrate that there is "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 794.  For these reasons, Loeb is not entitled to federal *habeas corpus* relief on this claim.

**2.    State's failure to disclose favorable evidence and allowing perjured testimony**

In his next claim, Loeb argues that the state courts made an unreasonable determination on his claim regarding the State's failure to disclose favorable evidence and allowing perjured testimony without correcting it.  He asserts that he was entitled to information about each of the individuals who were detained by the arresting officers who he alleges fabricated the charge against him.  He argues that the information in the police reports which he did not receive prior to trial illustrates that other individuals were arrested at the same place as he was, and that this bolsters his argument that another individual fled and threw the narcotics to the ground, which the officers then used to frame him.  Furthermore, he asserts that the State insisted during post-conviction proceedings that a separate police report for a simultaneous arrest did not exist.

The Fifth Circuit rejected this claim on collateral review, finding that the state district court had correctly concluded that Loeb failed to specify what evidence the State failed to disclose or when he discovered it was withheld.  Furthermore, the court also concluded that the claim was speculative and conclusory and therefore did not warrant relief under La. C. Cr. P. art. 930.2.

Claims of withheld evidence are cognizable on *habeas corpus* review as a violation of federal law under *Brady v. Maryland*, 373 U.S. 83 (1963).  However, the AEDPA places severe

limitations on this Court's review of the state court decision.  The United States Fifth Circuit

Court of Appeals has cautioned:

> Under AEDPA, [a federal court] do[es] not decide *de novo* whether a state
> prisoner has sufficiently proven a *Brady* violation. *See Yarborough v. Alvarado*, 541 U.S.
> 652, 665, 124 S .Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under
> AEDPA by conducting our own independent inquiry into whether the state court was
> correct as a de novo matter."); *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en
> banc) ("We have no authority to grant habeas corpus relief simply because we
> conclude, in our independent judgment, that a state supreme court's application of
> [federal law] is erroneous or incorrect."). Rather, [a federal court] decide[s] whether
> the state court's *Brady* determination resulted in a decision that is contrary to, or
> involved an unreasonable application of, clearly established federal law. *Busby v.
> Dretke*, 359 F.3d 708, 717 (5th Cir.2004).

*Dickson v. Quarterman*, 462 F.3d 470, 477–78 (5th Cir. 2006). For the following reasons, it is

evident that the state courts properly denied this claim.

With respect to claims that the prosecution withheld evidence in violation of *Brady* and

its progeny, the United States Supreme Court has held:

> A Brady violation occurs when the government fails to disclose evidence
> materially favorable to the accused. This Court has held that the Brady duty
> extends to impeachment evidence as well as exculpatory evidence, and Brady
> suppression occurs when the government fails to turn over even evidence that
> is known only to police investigators and not to the prosecutor.

*Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (internal citations and

quotation marks omitted). Therefore, to prevail on a *Brady* claim, a petitioner "must

show that (1) the state withheld evidence, (2) the evidence was favorable to the

accused, and (3) the evidence is material to guilt or punishment." *DiLosa v. Cain*, 279

F.3d 259, 262–63 (5th Cir. 2002).

Here, it is clear that Loeb has failed the "materiality" prong, so the Court need

not consider the other factors.  A *Brady* violation occurs only when the withheld

evidence was "material" in the constitutional sense.  On that point, the United States

Supreme Court has held:

> Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Youngblood*, 547 U.S. at 870 (internal citations and quotation marks omitted).  Under the

circumstances, it is unclear how the police reports of other individuals arrested would have

been helpful to Loeb at his own proceeding.  In light of the abundance of evidence against him,

including the testimony of four officers at the scene, the physical evidence of the heroin, and

the cash found on his person, it does not seem likely that having proof that another individual

was also arrested at the scene would have affected the outcome of Loeb's case.  Loeb has not

borne the burden of showing that this information was material in the constitutional sense.

The state courts' rejection of this claim was not an unreasonable application of federal law.

Loeb is not entitled to federal *habeas corpus* relief on this claim.

### 3.      Failure to suppress the evidence and confession

In his final claim, Loeb argues that the state courts made an unreasonable

determination when failing to suppress the evidence and the confession.  This claim has two

parts. First, the trial court ought to have suppressed the evidence because it was illegally

obtained in an invalid search and seizure in violation of the Fourth Amendment.  Second, the

trial court ought to have suppressed the confession because it was an involuntary statement

in violation of due process under the Fifth Amendment.  Both claims are meritless.

Insofar as Loeb asserts a violation of the Fourth Amendment, his argument must fail. In cases where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a prisoner may not seek collateral review of that claim. *Stone v. Powell*, 428 U.S. 465, 494 (1976).  In fact, "[t]he opportunity to present a fourth amendment claim to the state trial and appellate courts, whether or not that opportunity is exercised or proves successful, constitutes 'an opportunity for full and fair consideration' of a defendant's fourth amendment claim under Stone absent sufficient factual allegations and proof that the state process is 'routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on the merits.'" *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981).

Loeb clearly presented his arguments regarding his allegedly illegally obtained evidence to the state courts-both in a motion to suppress before the trial court and on direct appeal to the appellate courts.  Therefore, not only did have an opportunity to be heard, but he was indeed heard on these issues.  He is therefore not entitled to further review of this Fourth Amendment claim before this *habeas* Court.

Finally, Loeb asserts that his statement to the police was improperly admitted in violation of his due process rights under the Fifth Amendment.  Specifically, he contends that he was still suffering from the effects of the pepper spray when he was read his *Miranda* rights and therefore he waived them involuntarily.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the supreme Court established procedural safeguards to protect the constitutional rights of an accused to be free from compelled self-interrogation during a custodial interrogation.  Thus, the State must warn the accused of his

22

right to remain silent and his right to have counsel present during the custodial interrogation. *Id.* at 473.

Loeb argues that he could not understand his *Miranda* rights and therefore was entitled to suppression of the inculpatory statement he made following his arrest. After reviewing the record, it is clear that this claim must fail, as it was reviewed thoroughly by the state courts both on direct appeal and on collateral review, and the decisions reached were not unreasonable. In fact, the evidence strongly supports the conclusion that Loeb voluntarily waived his *Miranda* rights. On direct review, the Louisiana Fifth Circuit addressed this claim and found it was voluntary:[35]

> Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant was first advised of his *Miranda* rights, that he voluntarily and intelligently waived his *Miranda* rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. Whether a defendant's purported waiver of *Miranda* rights was voluntary is determined by the totality of the circumstances. The critical factor in a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement.

> A trial court's determination on the admissibility and its conclusion on the credibility and weight of the testimony relating to the voluntariness of the statement are entitled to great weight and will not be overturned unless unsupported by the evidence. An appellate court is not limited to the evidence adduced at the hearing on the motion in determining whether the trial court's ruling on a motion to suppress is correct but may also consider pertinent evidence presented at the trial.

> The statement at issue is one that was made by Loeb during the pre-interview, after he was arrested and transported to the detective bureau. According to Sergeant Matthews and Detective Modica, Loeb stated he sold heroin in the area

---

[35]*State v. Loeb*, 34 So. 3d 917 (La. App. 5th Cir. 2010); State Rec., Vol. 2 of 6, 5th Cir. Opinion, 2009-KA-341, 2/23/10.

where he was arrested to make money. Loeb subsequently declined to give a formal taped statement.

The thrust of Loeb's argument is that he was in need of emergency medical care due to the effects of the pepper spray and was given his *Miranda* rights during that procedure rather than at the detective bureau. Loeb contends that, under these circumstances, he was not properly advised of his *Miranda* rights. Accordingly, Loeb asserts that the statement should have been suppressed. The testimony contradicts Loeb's argument. The testimony of officers is that Loeb was informed of his *Miranda* rights after he had sufficiently recovered from the effects of the pepper spray. It was estimated that Loeb was advised of these rights about fifteen or twenty minutes after he was pepper sprayed.

According to testimony, Loeb appeared to be in his right mind and seemed capable of understanding his rights. At the time *Miranda* rights were explained to Loeb, only a drizzle of mucous was coming from his nose and his eyes were wide open and he was not breathing heavily. Loeb answered affirmatively when asked if he understood his rights. The officers' testimony shows that, after Loeb was pepper sprayed, he went through the decontamination process, which consisted of facing the wind and having water applied.

Nothing in the record indicates the effects of the pepper spray affected Loeb's ability to understand and voluntarily waive his rights. Further, no evidence was presented at the suppression hearing or at trial that suggested Loeb's statement was involuntary. He was advised of his rights after going through the decontamination process for pepper spray and after the effects of the pepper spray had dissipated. Loeb affirmatively acknowledged that he understood his rights and was transported to the detective bureau where he participated in a pre-interview and was cordial.

Based on the foregoing, we find that Loeb's statement was voluntarily given and, therefore, the trial court did not err in denying the motion to suppress the statement.

This decision was clearly reasonable in light of the abundant testimony at trial.  The Fifth Circuit correctly applied the *Miranda* framework and concluded that Loeb had failed to prove he involuntarily waived his rights.

The Fifth Circuit again addressed this claim on collateral review in the last reasoned decision on this issue.[36]  In its opinion the Fifth Circuit first reaffirmed its original finding that the statement was voluntarily.  The Court then added that even assuming for argument's sake that it could be found involuntary, any error would have been harmless in light of the abundance of other evidence facing Loeb at trial–namely, the testimony which established that Loeb ran from the officers and threw down a bag of 27 packets of tinfoil which tested positive for heroin.  This decision was not an unreasonable application of federal law.  Loeb is not entitled to federal *habeas corpus* relief on this claim.

---

[36]State Rec., Vol. 1 of 6, 5th Cir. Opinion, 13-KH-471, 6/19/13.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, **IT IS RECOMMENDED** that Petitioner's federal *habeas corpus* claims be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[37]

New Orleans, Louisiana, this <u>19th</u> day of _____<u>August</u>_____, 2015.

                                                       **DANIEL E. KNOWLES, III**
                                                       **UNITED STATES MAGISTRATE JUDGE**

---

[37]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.